Good morning. Our first case, or our only case this morning, is 081320 Park B. Smith v. CHF Industries. Mr. DePalma. Thank you, Your Honor. May it please the Court, Richard DePalma with the firm Thompson-Hein for the appellant Park B. Smith. And this is my first time before the Court. It's a great honor, and I thank you for having me. You're welcome. This is an appeal from a decision in a design patent case where the District Court granted summary judgment of non-infringement based on the application of the point of novelty test. And we view this appeal in light of the Court's recent decision in Egyptian goddess, whereas the Court knows the point of novelty test was put aside. What has remained unchanged, I submit, after the Egyptian goddess case is that the purpose of protection in design cases remain the same. I mean, the point of the test, as articulated by the Court, is and has always been to determine whether a claim design has been appropriated as a whole. And the Court, of course, has used a variety of articulations of the ordinary observer test, and most recently the one in Egyptian goddess. But it has always been the case that slight variations are not going to destroy substantial similarity of identity. And infringement, of course, is a factual question. What has changed is that the Court has pushed aside the point of novelty test. And the District Court specifically found that there was sufficient similarity in the accused design and the patented design such that there was a question of fact, precluding summary judgment of non-infringement on the ordinary observer test, of course articulated before Egyptian goddess, but granted summary judgment on the point of novelty test, and also construed lawmen to state that you can't have a unique combination of design elements where all of those elements also constitute the entirety of the design. And I think Egyptian goddess has, in addition to pushing aside the point of novelty test, also given some clarity in connection with that concept. And I do not believe it is the law, especially after Egyptian goddess, that a combination of elements, even if they are all old, and in most cases that's really the case anyway. But Egyptian goddess did bring in the ordinary observer test as the principal reference point. Absolutely, Your Honor. How has that been applied by the lower court in this particular instance? The lower court did not apply the observer test. Well, didn't apply it as articulated in Egyptian goddess. And I submit to you that remand is required so that it can be applied. And particularly, I think, because in Egyptian goddess you had a sort of a hard four-sided or three-sided, depending on which of the variety of items you were looking at, implement that was readily photographed. And it doesn't indicate whether the court observed it in person. But here what we have, and there's a bit of dispute about this, is soft shades, which come in a package, which have to be attended to in order for them to drape. And a specific part of the claim design, which is really important to this, is the shape, not only of the bottom folds, but also of the rod pocket. And the fact that the rod pocket and the bottom are mirror images of one another. And so, particularly in connection with, now getting back to your point, when you take into consideration the alleged prior art, and I've seen at least some versions of this prior art in person, there is a marked difference in appearance, overall difference in appearance, between the accused design, the protected design, and the prior art. Is that what the trial court really needs to do? Take a look at the prior art and compare it? Is there a comparison type of an analysis that has to be done by the trial court? I believe that if Egyptian goddess is being followed, the court has to, when it uses the ordinary observer test, has to be familiar with the prior art. And I think in a case like this one, to the extent it's possible, actually observing the embodiment of the prior art, particularly where there's a dispute whether it's really prior art or not. All of the pictures that you see are pictures of things purchased in 2006. But the lower court never even considered the prior art in this situation, did it? I think the lower court would have to do so in connection with the remand, if it were to apply the Egyptian goddess. But it didn't do so with the point of novelty test that it applied under law in the other cases prior to Egyptian goddess. That is correct, Your Honor. You know, I think when you look at at least the reasoning from reading the Egyptian goddess cases, that the court adopted the analysis that it did, it sort of shines a light on why in this particular case the position of the defendant of Peli is unsustainable. I mean, the court said it was getting away from the point of novelty test because it wanted to get away from giving defendants more opportunities to argue a design does not infringe because it doesn't copy all of the points of novelty, even though the overall design is substantially similar. And also, the new test does not present a risk of assigning exaggerated importance to small differences that don't make an impact on the overall similarity of the products. And that's exactly what's happening in the case here before you. I mean, what we've got is a number of things that the defendant has pointed to, like some stitching, same-colored stitching, some slats, which are in fact functional elements and were observed by the lower court to, I think the court said, could be functional elements outside of the protected design, and a weighted bar, which likewise is a functional element. But when you look at the accused product as a whole,  you would find that there is a substantial similarity. And the court found that, but I think that, as we've said, the court has not applied the Egyptian goddess standard. So your position without qualification, Mr. DuPont, is that in this case we can't decide it. It should be sent back for further proceedings in light of Egyptian goddess. I believe that that's the case, Your Honor. Yes, indeed. And I guess, you know, I mean... It's kind of hard to decide these on summary judgment now in light of Egyptian goddess. I think that's absolutely right, Your Honor. I mean, it is a factual inquiry, and of course there are going to be cases where I think that is possible. Summary judgment is probably possible in some cases, but I don't think it's possible in this case at all. I mean, when we made the summary judgment cross-motion, as did the other side, I mean, Egyptian goddess wasn't there, lawmen had just come down. There was certainly some confusion in the Diction Court about lawmen. At least I submit to you there was. I think all of the things that the judge relied on below, in fact, have been done away with in Egyptian goddess. In particular, this piecemeal concept, because in Egyptian goddess the court did say that the new test, the re-articulated test, does away with the dangers and the concept that you have to worry about whether it's the entirety of the design, whether it's a subset of the design. You know, you don't need to deal with that anymore if you properly applied the test that's been articulated by this court. So I do think in our case that summary judgment, remand is required, and summary judgment is inappropriate. In particular, there's some discovery needed with respect to the assertion of prior art. Well, the judge found on the ordinary observer part of the old test, the judge found that summary judgment was inappropriate because there were fact issues. Yes, and I concur with that at this point. So unless there's any other questions on that, I have reserved some time. I'll wait until my colleague at the bar has spoken. Thank you. Mr. Solcher? Are you ready?  May it please the court. As this court has frequently recognized, the appeals courts have a special obligation, a constitutional obligation, to ensure that they have subject matter jurisdiction before they act on appeals such as this one. And I would refer the court to International Electronic Technology at 476 F. 3rd, 1329 as an example of the court's pronouncements on that issue. Now, because this court's denial of CHF's motion to dismiss this appeal, which was based on Federal Rule of Appellate Procedure 4A. 2, cannot be squared with the Supreme Court's decision in first-tier mortgage, which is at 498 U.S. 269, I would like to address the issue of subject matter jurisdiction first before we go to the merits. Well, let me ask you, Mr. Solcher, before we get to that, I know you disagree, obviously, with Mr. DePalmo on the ultimate result in the case, but leaving this issue aside, which I guess our motions panel addressed, correct? It did, Your Honor. Yeah. A single judge, not a panel. Would you agree with him, at least, that this case should go back in light of Egyptian goddess? Not at all, Your Honor. No remand is necessary here, and I think— But how? I mean, there's a new test. There are fact issues. We can't get into going through all of these various designs and stuff. Isn't it just—isn't the prudent, careful, appropriate thing to send it back and let the judge apply the Egyptian goddess test? Who can quarrel with that? If I may, Your Honor. We have provided the court with notebooks containing demonstrative exhibits of ours, CHF's demonstratives, A through I, and I think this issue is best addressed in relation to a demonstrative exhibit, I. And with leave, I'd like to have my assistant put I up on the easel. I think it will address exactly your question. Is this an exhibit that was before the trial court? It was not, Your Honor. This is an exhibit that we created post-Egyptian goddess. Is there any objection from the other side? I have not lodged one, Your Honor. I'm prepared to let the court look at it if you like. You're submitting factual evidence before us, but go ahead. Wouldn't this be something best for the trial court to look at? We're not a fact finder. I mean, we can look at it, but— All of these facts, Your Honor, with the exception of Egyptian goddess, but the facts in the lower portion of this exhibit were before the district court. The photographs in the lower left-hand portion of this exhibit are photographs of the accused design. These can be found in Park B. Smith's papers. The claim design, you see figure one on the right, A37, is figure one from the 651 patent, and A40 is figure four of the 651 patent. And the parties have treated 651— When you say this was not before the district court, this particular— The component portions of it, yes, below the line in the case at Bar. Now, why is no remand necessary? Well, in Egyptian goddess, this court found no remand necessary and affirmed an entry of summary judgment on alternate grounds. Egyptian goddess en banc was the beginning of the ordinary observer test as we now know it. The district court had not had an opportunity in Egyptian goddess to apply the ordinary observer test as we now know it. But the facts in Egyptian goddess were so clear to this court en banc that the court chose not to remand and entered a finding of summary judgment of non-infringement on alternate grounds. The only difference between the claim design and the accused design in Egyptian goddess is the absence in the claim design of one buffer pad. There are four sides to the claim design. Three of the four sides have buffer pads on them. One side doesn't. In the accused Suiza buffer, all four sides have buffer pads. That's the only difference in that case. Now, the court also found that the accused design was close to the prior art. The prior art had a triangular-shaped buffer with pads on all three sides and it had a square cross-section buffer, but it was solid instead of hollow with pads on all four sides. In our case, the district court hasn't said anything about the prior art. Indeed, truly, Your Honor. There are comments in your brief about it being crowded and so forth. That's a fact matter that hasn't been decided yet. That's what you say. And, of course, the exhibits that you were using were very recent. The examples you were using for the prior art were very recent, but we don't know about what happened before. Well, those are fact matters, aren't they, that have to be developed and have not yet been developed, as opposed to what the Egyptian goddess case had? Ordinarily, when you have a genuine dispute of material fact, I am in complete agreement with Your Honors that that's a matter that belongs before the district court for determination of whether to give it to a jury or not and, ultimately, if there is a genuine dispute, to put it before a jury for a decision. I submit that this case is so clear, the facts are so extreme, much more extreme than in Egyptian goddess, that if Egyptian goddess was resolvable without remand, this case surely is resolvable without remand. If I may, I'd like to have Demonstrative Exhibit A put up. Demonstrative Exhibit A is a collage that shows all of the prior art that was submitted to the Patent Office by Park B. Smith, and there are some representations here of additional prior art that was made of record before the district court. Is this like the other exhibit in that, even though this exhibit is new, all of the items on it are before the district court? Yes, Your Honor. Absolutely. And if you look in your notebooks, Exhibit A-prime tells you exactly where in the record each of these figures comes from. Now, I submit, Your Honor, that no juror could conclude but that this art is crowded and close to the pacts in suit. The 651 patent, Figure 1, is shown in the very center of this exhibit, and I don't think there's a juror alive on the face of this planet that would say that this art is anything but close and crowded, extremely close to the prior art. The questions that Mr. DePalma has raised this morning about whether or not some of these references are indeed prior art, we submitted in support of our summary judgment motion, chapter and verse declarations of people with personal knowledge who are on the ground at the time dealing with the prior art in question, all of whom testified, Mr. Cavanaugh, Ms. Cascini, Jennifer Thoden, that the references that he's saying are questionable as prior art are indeed prior art, and they have no evidence of record. All they have is the declaration of Linda Johnson Smith, which simply asks a question. It says, I'm not sure that these commercial products were indeed prior art. It's not clear to me that what we have presented in photographs is what was sold. That's her response to declarations that state categorically and in detail that this prior art is indeed prior. There is no genuine issue on this record that the art here is prior, and I submit that no ordinary observer and no juror could possibly conclude that the art is anything but close and crowded. If there were a genuine issue as to that, then certainly it would belong back in front of the district court for resolution by a fact finder. Because this art is so close and is so crowded, there are two alternate grounds on which we think Egyptian goddess, I'm sorry, this case can be decided without remand, just as in Egyptian goddess. The first ground is in Egyptian goddess, the en banc court said, when the prior art is crowded and close, the claims of the patent in suit must be construed very narrowly. That's this court's language quoting from Litton and Applied Arts. If the claims here are construed very narrowly, they cannot possibly cover the accused design. Reason being, the prior art just to the right of the 651 patent, that's the country curtain's blue twall design, has all of the features of the claim design, a rod pocket, a plain front and back panel, cascading folds, a mirror image of the rod pocket and the folds. The only difference between that piece of prior art, which is in essence a dead nuts anticipation of the claim design, is that it has a weight bar and a partial skirt that folds over at the bottom of the shade. So does the accused design as you can see in A1363 in our exhibit on. If you try to cover the accused design with these patents, you cover the prior art. Egyptian goddess said that's an impermissible effort to encompass and overreach by claiming the prior art. And this is all clear as a matter of law, as it was to the court in Egyptian goddess. Second, the slats, the horizontal ornamental features that you see on exhibit I, the weight bar and partial skirt that you see on exhibit I, all are sufficiently visible, sufficiently distinctive that no ordinary observer could possibly confuse them with the claim design, or could possibly conclude that the claim design as a whole has been misappropriated. The claim design as a whole here includes as a fundamental aspect of it that it is plain, unornamented and flat. The accused design is anything but plain, unornamented and flat. To say that there could be a genuine dispute here that the accused design has appropriated the claim design, I think essentially defies the physical reality of this case. No amount of discovery can change the facts of record, which are undisputed. That is the accused design. That's not going to change no matter how much discovery is taken in this case. The figures of the patent are the figures of the patent. We're talking about immutable physical facts, just as in Egyptian goddess. In fact, this court did not remand Egyptian goddess even in the face of conflicting expert testimony. There were conflicting expert declarations, one saying there could be confusion, one saying there could not be confusion. And based on the physical reality that you see above the line in Exhibit I, this court concluded no one could confuse the accused design and the claim design. I submit that our case is so much further down the continuum of non-infringement that this case also can be resolved without remand. Now, as to subject matter jurisdiction, there are three reasons why this court lacks jurisdiction to hear Park v. Smith's appeal. First, Park v. Smith did not file a notice of appeal naming this court within 30 days of either of the non-final orders it tried to appeal from, the March 6th summary judgment decision or the March 10th judgment, neither of which was a final order. The April 9th notice submitted by Park v. Smith was defective as to content, fatally defective, under Appellate Rule 3C1C, and its April 29th notice was fatally defective as to time under Appellate Rule 4A1A. It was out of time. Second, and even more important, Park v. Smith did not file a notice of appeal within 30 days of the stipulated dismissal entered by the court as an order on May 6, 2008. The district court's May 6th order dismissed CHF's remaining invalidity and exceptional case counterclaims. These counterclaims were still pending in the case as of March 10th when judgment was entered. The May 6th order of dismissal was the only final appealable order in this case. And third, contrary to this court's ruling on June 19th, the premature notices of appeal filed by Park v. Smith did not ripen into an effective appeal upon entry of the May 6th order under the Supreme Court's decision in first-tier mortgage and this court's decisions in meat instruments and Stony Point products. Under those cases, Rule 4A2 does not apply to this case at all, but that was the basis for this court's denial of our motion to dismiss, Rule 4A2, because neither the March 6th or March 10th non-final orders appealed from were decisions within the meaning of Rule 4A2. This is so precisely because our exceptional case and invalidity counterclaims were still pending when the March 6th and March 10th orders were entered by the court. The orders appealed from those orders did not dispose of all claims and counterclaims in the case and could not be made final by the ministerial act of entering a Rule 58 judgment, as was done here. But that is exactly what's required by first-tier mortgage for Rule 4A2 to apply. Those orders, one of them, had to have been final all but for a Rule 58 judgment, and it is simply and unequivocally not the case here. Moreover, Park B. Smith knew that those orders weren't final. As of April 23rd, when it signed the stipulated dismissal that the district judge entered as his May 6th order of dismissal. What is wrong with Judge Newman's conclusion that these are right and done into an appropriate appeal? It runs right into the teeth of first-tier mortgage, Your Honor. First-tier mortgage says that 4A2 simply does not apply unless the decisions that are appealed from or the orders that are appealed from disposed of all claims, counterclaims, cross-claims in the case, and the only act left to be done is the entry of a separate piece of paper called judgment. And that's just not the case here. Now, once May 6th came along and the district court entered its final order in the case, its order of dismissal, Park B. Smith did nothing. There is no notice of appeal after the final order was entered in this case. The 30 days after May 6th has long expired, and if this court were to conclude that a further judgment, perhaps an amended judgment, were needed but wasn't entered, Rule 58C2B would kick in, and 150 days, by operation of law, after 150 days from May 6th, the final judgment would be deemed entered, and the 30-day period under Rule 4 would begin to run. That 30-day period expired on November 2nd of 2008. And again, nothing was filed by Park B. Smith. So they've had opportunity... What about Rule 54B type of a motion? Couldn't they make that? They could have tried, but they chose not to. How could they make it now? Given that the district court no longer has jurisdiction, it has entered a final judgment... You're saying they no longer have jurisdiction, and we have jurisdiction. Is that what you're saying? No, because no notice of appeal was filed from the time that the district court had given up its jurisdiction. So the jurisdiction is still there with the district court? No. Time has simply expired under Rule 4 for Park B. Smith to have tried to get the case into this court. We are in a state of... We should be in a state of repose. This court should be dismissing this appeal outright. It is possible for a case no longer to be within the jurisdiction of the federal courts. If there's a final judgment, and there are no pending claims or counterclaims, the true final order has been entered in the district court, and 30 days expires and nothing is done, the case is over. And that's exactly what should happen here. This case should never go back to the district court. This court should dismiss this appeal outright for lack of subject matter jurisdiction. All right. Thank you. Commissioner DePaulo. Your Honor, dealing with the issue of the alleged crowded and closed prior art, as has been pointed out, the district court didn't consider any of that and needs to in order to be able to... be able to apply the Egyptian goddess ordinary observer test. A couple of points I'll make, and then if there's no questions, I'll sit down. One is, the court specifically found below that those slats, while they could be seen on the photographs, could be functional and outside the design. And indeed, they are functional. They're what hold the blind from closing up on itself when it's put on a bar. Same is true with respect to the weight bars. I mean, they're there to hold down the bottom of the shade. These are all questions that have to be included in the analysis by the district court when it does the ordinary observer test. There is one thing I would like to point out. Mr. Salter made a point that the country curtains, supposedly prior art, is something that is uncontroversial. In fact, that's not the case at all. Indeed, there was an affidavit from somebody, from a country curtain, who says that, and this is at the record at A670, a person, Nancy Chiaschini, C-I-A-S-C-H-I-N-I. All she does is attach a catalog that says they sold a Roman shade with this material back in 2000. She does not say that the shade that has been photographed and pictured is indeed the same shade. In fact, the shades that you've seen, which are pictured in the presentation by counsel, is from somewhere in 2006. What is your response to Mr. Salter's jurisdictional argument? Well, Your Honor, I honestly didn't prepare to argue it in depth. I mean, I would rely on the papers that we submitted, but frankly, we did indeed file a notice of appeal timely, and in fact, that notice of appeal did say it was being appealed to the Second Circuit. We've briefed that issue, and that appeal, where the case law supports the proposition, this was not the basis for the Court's original ruling, but the case law supports the proposition that where there is only one court to which an appeal can be taken, a misstatement of that court in the notice of appeal is not jurisdictional, and we've submitted that in our papers, and we submit that that original document wasn't timely and proper appeal. There was an amended notice of appeal that was filed with the correct court at the direction of the district court clerk, who told us not to make a motion to transfer it to this court from the Second Circuit, and indeed it was submitted to this court in connection with those documents. I also believe that the court not only ruled correctly with respect to the original motion, but there was a motion for re-argument that was likewise denied on this issue. And so we've timely filed notices of appeal. I do agree with the court that the notice of appeal did write, and I do not agree that it is not an appropriate rule for a situation, and I would rely on the papers in regard to that. I can't speak to the case of first-tier mortgage. I haven't read it. I mean, I haven't read it recently, and I can't speak to it as we stand before the court now. Unfortunately, and I apologize, but I did not think we would be going into depth in the jurisdictional point, having been through this twice before and haven't had a ruling by this court in connection with that motion already. So if there are no other questions, I would rely on the briefs and on the record. I would ask for re-argument. Thank you very much. The case is submitted. All rise.